# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 16-cv-62681-BLOOM/Valle

TANIA P. BERBRIDGE,

      Plaintiff,

v.

SAM'S EAST, INC.,
d/b/a Sam's Club,

      Defendant.

_____/

## <u>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

**THIS CAUSE** is before the Court upon Defendant Sam's East, Inc.'s ("Defendant")
Motion for Summary Judgment, ECF No. [65] (the "Motion"). The Court has carefully reviewed
the Motion, the record, all supporting filings, the exhibits attached thereto, and is otherwise fully
advised. For the reasons that follow, Defendant's Motion is granted.

## I.    BACKGROUND

This case involves allegations of negligence against Defendant arising from a slip-and-fall
incident at Defendant's store on August 10, 2015. *See* ECF Nos. [1-2], [64] at ¶ 2. While Plaintiff,
Tania Berbridge ("Plaintiff"), was shopping at Defendant's store, she slipped and fell on "dirty
water" on the floor of the frozen-food aisle. *See* ECF No. [64] at ¶ 2; ECF No. [80] at ¶ 2. Plaintiff
entered the frozen-food aisle from the rear and no one else was present at the time of the incident.
*See* ECF No. [80] at ¶ 62; ECF No. [65-2] at 67. After Plaintiff fell and picked herself up from the
ground, a male employee, James Tello ("Tello"), came around the corner and approached her at

which time Plaintiff showed him the substance on the floor.[1]  *See* ECF No. [64] at ¶¶ 3 and 14; ECF

No. [80] at ¶¶ 3 and 14.  Tello then looked at the floor followed by the ceiling and noticed that the air

conditioning unit ("AC unit") was dripping.  *See* ECF No. [64] at ¶ 3; ECF No. [80] at ¶ 3.  Tello

indicated that the water on the floor was coming from the AC unit.[2]  *Id.*  Before Plaintiff left the area,

she observed a drop of water leaking from the AC unit, but testified that it was not dripping heavily.

*Id.*  Tello cleaned up the water.  *See* ECF No. [64] at ¶ 15; ECF No. [80] at ¶ 15.

Plaintiff did not see the substance until after her fall.  *See* ECF No. [64] at ¶ 4; ECF No. [80]

at ¶ 4.  She testified it was "like dark, like a dirty."  *Id.*  She could not remember whether it was clear

water, but testified that it "wasn't that big" and it was "like medium size."  *Id.*  The substance was

wet but not sticky, and there were no shopping cart marks going through it.  *See* ECF No. [64] at ¶ 5;

ECF No. [80] at ¶ 5.  When Plaintiff stood up from the floor, she observed a mark caused by her shoe

sliding through the substance.  *See* ECF No. [64] at ¶ 6; ECF No. [80] at ¶ 6.  Plaintiff does not know

what caused the substance to be dirty.[3]  *Id.*  She likewise does not know how long the AC unit was

leaking before her fall, how long the substance was on the floor, whether anyone at Defendant's store

knew about the leaking AC unit, or the last time the area was inspected.[4]  *See* ECF No. [64] at ¶¶ 7,

9, 10 and 11; ECF No. [80] at ¶¶ 7, 9, 10, and 11.  Tello similarly does not know how long the water

---

[1] Tello testified that Plaintiff's incident occurred at the opposite end of the aisle from where he was standing.  *See* ECF No. [80] at ¶ 63.  He was standing near the sample carts.  *See* ECF No. [80] at ¶ 66.

[2] Although Tello testified that he did not observe any leak from the AC unit on the day of the incident and did not otherwise observe anything dripping, the Court must view the facts in the light most favorable to Plaintiff, as the non-moving party, and draw all reasonable inferences in her favor on summary judgment.  The Court will not weigh the credibility of conflicting testimony on summary judgment.

[3] Plaintiff admits this statement "subject to Plaintiff's contemporaneous objection" to the form of the question; however, the Court finds there was nothing objectionable about the question.  *See* ECF No. [80] at ¶ 6.  Plaintiff was asked "[d]o you know what caused the substance to be dirty?" to which she responded "I don't know."  ECF No. [65-2] at 148.

[4] In her Statement of Facts, ECF No. [80], Plaintiff responds to paragraph 11 of Defendant's Statement of Facts, ECF No. [64], by stating that Tello "was standing in the middle of the entrance to the aisle where Plaintiff's incident occurred for 'a while,' which he later equated 'a while' to 30 minutes."  ECF No. [80] at ¶ 11.  The Court's review of Tello's testimony, however, reveals he said that "about 30 minutes" had passed "[f]rom the time that [he] saw this individual [referring to Plaintiff] or the noise that [he] heard, until the time that [he] saw her at the front sitting [sic] of the store sitting there with Lawrence."  ECF No. 65-3 at 61.  Plaintiff's citations to Tello's transcript do not contain any testimony suggesting that Tello was standing in the entrance of the frozen-food aisle for thirty minutes before the incident.  Rather, Tello testified that thirty minutes elapsed from the moment he first saw Plaintiff until he saw her sitting in the front of the store with Asset Store Manager Lawrence Lucce.

was on the ground before Plaintiff's incident. *See* ECF No. [64] at ¶ 17; ECF No. [80] at ¶ 17. The Asset Protection Manager, Lawrence Lucce ("Lucce"), could not confirm the last time the frozen-food aisle had been inspected. *See* ECF No. [65-4] at 61-62.

According to Defendant's maintenance records, at 18:15:19 on the day of the incident, an entry was made stating: "PER STORE, A/C UNIT ABOVE MIDDLE FREEZER IS MAKIN [sic] LOUD RATTLING NOISES."[5] ECF No. [81-1] at 6. Anthony Guzman ("Guzman"), the team lead for produce, grocery and freezer coolers, testified that he once heard a rattling above the middle freezer, so he used the scissor lift to raise himself to see the pipe. *See* ECF No. 65-5 at 21-22. He noticed the pipe was shaking, so he put his hand on it to make the shaking stop. *Id.* at 23. However, Guzman did not recall when he noticed the shaking pipe or whether this occurred in August of 2015. *Id.* at 32.

In this lawsuit, Plaintiff has sued Defendant for negligence, alleging that Defendant, as a premises owner, owed her a duty to provide a reasonably safe environment and that it breached that duty by causing her to slip on a liquid substance and sustain injuries. *See* ECF No. [1-2]. Defendant has moved for summary judgment on all claims pled in the Complaint on the basis that Plaintiff cannot prove it had actual or constructive knowledge of the substance on the ground and did not, therefore, breach any duty owed to Plaintiff. *See* ECF No. [65]. Plaintiff and Defendant filed a timely Response and Reply respectively. *See* ECF Nos. [81] and [86]. This Motion is now ripe for adjudication.

## II. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record,

---

[5] Plaintiff testified that the incident occurred at approximately 1:30 p.m. Therefore, this entry, which is stated in military time, was created almost five hours after the incident.

including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in

the non-moving party's favor.  *Shiver*, 549 F.3d at 1343.  But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence on the record supports the uncontroverted material facts that the movant has proposed.  *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## III.  DISCUSSION

Defendant seeks summary judgment on the basis that there is no evidence it had actual or constructive knowledge of the substance on the ground prior to Plaintiff's fall and therefore, there is no evidence it breached a duty.  Plaintiff, on the other hand, argues that there is evidence of both actual and constructive notice, requiring the denial of summary judgment.  Reviewing all facts and drawing all inferences in Plaintiff's favor, the Court finds that, as a matter of law, Plaintiff cannot prove that Defendant had actual or constructive notice.

### A.  Premises Liability Standard

The Court begins its analysis with the notion that, in a diversity case, it must apply the substantive law of the state in which the case arose.  *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132-33 (11th Cir. 2010).  For that reason, the Court looks to Florida negligence law. In a negligence claim, Florida law requires that a plaintiff prove the following four elements: (1) the defendant had a duty to conform to a certain standard of conduct, (2) the defendant breached that duty, (3) the breach of that duty caused damages to the plaintiff, and (4) the plaintiff sustained damages.  *Encarnacion v. Lifemark Hospitals of Fla.*, 211 So. 3d 275, 278-79 (Fla. 3d DCA 2017) (quoting *Wilson-Greene v. City of Miami*, 208 So. 3d 1271 (2017)).  In a premises

liability case, Defendant, as a premises owner, owes Plaintiff, as a business invitee,[6] "a duty to exercise reasonable care to maintain [its] premises in a safe condition." *Encarnacion*, 211 So. 3d at 278.  To demonstrate a breach of that duty in a case involving a transitory foreign substance, such as this one, the Florida Legislature has mandated that the plaintiff prove the defendant had prior notice – actual or constructive - of the dangerous condition.  Florida Statute § 768.0755 states, in relevant part, as follows:

> 1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
>
> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition;
>
> or
>
> (b) The condition occurred with regularity and was therefore foreseeable.

Fla. Stat. § 768.0755.

## B.  Actual Notice

Starting with actual notice, a premises owner has actual knowledge of a dangerous condition when its employees or its agents "know[] of or create[d] the dangerous condition." *Barbour v. Brinker Florida, Inc.*, 801 So. 2d 953, 957 (Fla. 5th DCA 2001) (citing *Food Fair Stores, Inc. v. Trusell*, 131 So. 2d 730, 732 (Fla. 1961)).  In response to Defendant's Motion, Plaintiff has not presented any evidence from which it can be inferred that Defendant created the condition on the floor or that it knew about the condition prior to Plaintiff's incident.  Although she argues that "[i]t can be reasonably inferred from the record evidence that the Defendant actually knew about the dangerous condition that ultimately caused Plaintiff to slip and fall as

---

[6] Plaintiff's status as a business invitee is undisputed.  *See* ECF No. [80] at ¶ 40.  In its Reply, Defendant did not dispute this fact asserted in Plaintiff's Statement of Material Facts. *See* ECF No. [86].

they created it. . . . ," ECF No. [81] at 2, Plaintiff has failed to submit any documentary or testimonial evidence establishing that Defendant's employees knew about a leaking AC unit prior to Plaintiff's fall, that Defendant caused the AC unit to leak, or that Defendant somehow created the condition on the floor. Instead, in one swooping statement, Plaintiff argues that the same evidence upon which she relies to establish constructive notice demonstrates that Defendant had actual notice.[7] As explained below, Plaintiff's evidence does not rise to the level of constructive knowledge, much less actual knowledge.

### C. Constructive Notice

As to the issue of constructive notice, Plaintiff may prove this in one of two ways: (1) "[t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition" or (2) "[t]he condition occurred with regularity and was therefore foreseeable." Fla. Stat. § 768.0755 (1). Plaintiff's Response "concedes that there is no record evidence of the dangerous condition occurring with any regularity to establish constructive notice pursuant to Fla. Stat. § 768.0755(1)(b)." ECF No. [81] at 2, n.1. Thus, the summary judgment issue turns on whether the substance on which Plaintiff slipped existed for such a length of time that Defendant, in the exercise of ordinary care, should have known about it and taken action to remedy it.

A plaintiff's "right to recover in a slip and fall case requires more than a showing simply that the surface upon which the injured fell was slick, smooth, or wet." *Feinman v. Target Corp.*, No. 11-cv-62480-CIV, 2012 WL 6061745, at *6 (S.D. Fla. Dec. 6, 2012) (quoting *Williams v. Holland*, 205 So. 2d 682, 683 (Fla. 1st DCA 1968)). "When considering whether

---

[7] In support of her actual notice argument, Plaintiff cites to *Linares v. Home Depot, Inc.*, No. 12-60308-CIV, 2013 WL 1343329 (S.D. Fla. April 2, 2013). *See* ECF No. [81] at 7. *Linares*, however, did not conclude that Home Depot, as the premises owner, had actual notice. Rather, it analyzed the issues based on constructive notice and is, therefore, not instructive on this specific question.

there is an issue of fact for submission to a jury in transitory foreign substance cases, courts look to the length of time the condition existed before the accident occurred." *Wilson-Greene v. City of Miami*, 208 So. 3d 1271, 1275 (Fla. 3d DCA 2017) (quoting *Dominguez v. Publix Super Markets, Inc.*, 187 So. 3d 892, 894 (Fla. 3d DCA 2016)). "[T]he mere presence of the substance on the floor is not enough; the record must have additional facts to create a permissible inference about the time the foreign substance had been on the floor . . . without this evidence, a finding of negligence would be sheer speculation." *Ayers v. Wal-Mart Stores, East, L.P.*, No. 15-24663-CIV-GAYLES, 2017 WL 747541, at *2 (S.D. Fla. Feb. 27, 2017).

Interpreting the constructive knowledge component of § 768.0755, Florida's Third District Court of Appeal recently explained that:

> [T]estimony that the substance on the floor was 'oily,' 'dirty,' and 'dark,' even if true, as we must assume for our purposes here, is insufficient to create a jury issue. For such testimony to create a jury issue, the testimony must be accompanied by a 'plus,' namely some additional fact or facts from which a jury can reasonably conclude that the substance was on the floor long enough to have become discolored without assuming other facts, such as the substance, in its original condition, was not 'oily,' 'dirty' and 'dark.'

*Encarnacion*, 211 So. 3d at 278.

Here, the sum of Plaintiff's evidence describing the substance is that it was "like dark, like a dirty," it "wasn't that big" and it was "like medium size." ECF No. [80] at ¶ 4. Although the substance was wet, Plaintiff stated it was not sticky and it did not have any shopping cart marks going through it. *See* ECF No. [64] at ¶ 5; ECF No. [80] at ¶ 5. When Plaintiff stood up, she saw a mark going through the substance, but admitted it was from her shoe sliding through it.[8] *See* ECF

---

[8] In her Response, Plaintiff argues that "the water in this case was 'dark' and 'dirty' *and had a slip mark in it*," thereby satisfying the constructive notice requirement. *See* ECF No. [81] at 6 (emphasis added). Importantly, Plaintiff testified that the slip mark was caused from her own shoe sliding through the substance. She testified as follows:

> Q. Okay. And you testified earlier that after you fell, you saw the slip mark in the substance from where you slid in it, is that correct?

No. [64] at ¶ 6; ECF No. [80] at ¶ 6.  She does not know what caused the substance to become dirty. *Id.*  Based on Plaintiff's description, the evidence relevant to constructive notice is that the substance was "dark" and "dirty."  This testimony standing alone is insufficient to create a jury issue.  To infer from these facts that the substance was on the floor long enough to become dark and dirty, Plaintiff must provide evidence of a "plus."  That is, some other evidence to demonstrate that the water was not "dark" and "dirty" in its original condition.  A conclusion that the substance was dirty due to the passage of time – without any evidence of, for example, footprints or track marks – would require impermissible inference stacking, meaning it requires the assumption of additional facts not present in the record.  *See Wilson-Greene*, 208 So. 3d at 1275 ("In the instant case, the jury first would need to infer that the substance was hot prior to spilling on the floor and infer from this that it was on the floor a sufficient amount of time for it to have cooled.  This requires a jury to impermissibly stack inferences."); *McCarthy v. Broward College*, 164 So. 3d 78, 82 (Fla. 4th DCA 2015) (affirming summary judgment in a transitory foreign substance slip-and-fall case when the plaintiff's rain water theory required the court to stack inferences).  More specifically, it would require the Court to assume that (1) the substance was not "dark" or "dirty" when it dripped down from the AC unit,[9] (2) the substance did not become "dark" and "dirty" as a result of Plaintiff's foot sliding through it, and (3) that the substance was on the floor for a sufficient period of time to make it "dark" and "dirty."

---

A. When I got up.
Q. When you got up, yeah, you saw the slip mark in the substance from where your shoe slid in it?
A. Yes.

ECF No. [65-2] at 147.  In Defendant's Statement of Material Facts, Defendant stated: "After she slipped, Plaintiff observed a slip mark in the substance *from where her shoe slid in it*."  ECF No. [64] at ¶ 64 (emphasis added).  In her own Statement of Material Facts, Plaintiff did not dispute this.  Plaintiff cannot credibly argue that evidence of a mark caused by her own foot as she slid through the substance is evidence of Defendant's constructive knowledge of the substance *before* her fall.

[9] In a footnote, Plaintiff states that "it is common knowledge that water, in its original condition, is not 'dark' or 'dirty.'"  However, Plaintiff's theory is that the water was leaking from an AC unit.  The conditions of the AC unit are not described anywhere in the record.  To determine that the water became "dark" and "dirty" while on the ground, the Court must assume that the AC unit on the ceiling of the store was in pristine condition and, therefore, any water dripping down from unit would naturally be clean and clear when it leaked.  Such an assumption would require inference stacking.

Without evidence of a "plus," this Court cannot stack inference upon inference to find that the "dark" and "dirty" condition is in and of itself evidence of constructive notice.

In her Response, Plaintiff heavily relies upon the case of *Mashini v. LaSalle Partners Mgm't Ltd.*, 842 So. 2d 1035 (Fla. 4th DCA 2003), to argue that the presence of dirt in water can "create an inference that it was on the floor for a period of time sufficient to create constructive notice." She also relies upon *Garcia v. Sam's East, Inc.*, No. 2:14-cv-2748-T-TBM, 2015 WL 12765459 (M.D. Fla. Nov. 9, 2015), to argue that, evidence of water dripping from above "is sufficient to impute constructive knowledge of the dangerous condition on Defendant." *See* ECF No. [81] at 6. As explained below, neither case supports Plaintiff's position.[10]

The Court begins its analysis with *Mashini*, a 2003 opinion relying upon the Florida Supreme Court case of *Owens v. Publix Supermarkets, Inc.,* 802 So. 2d 315 (Fla. 2001), which found that "the existence of a foreign substance on the floor of a business premises that causes a customer to fall and be injured creates a rebuttable presumption that the premises owner did not maintain the premises in a reasonably safe condition." *Mashini*, 842 So. 2d at 1038 (quoting *Owens*, 802 So. 2d at 331). *Owens*, however, is no longer the applicable standard in transitory foreign substance cases. *See Pembroke Lakes Mall Ltd. v. McGruder*, 137 So. 3d 418, 423 (Fla. 4th DCA 2014). Prior to

---

[10] Plaintiff also cites to other transitory foreign substance cases in which summary judgment was denied. As Defendant points out though, these cases contained evidence demonstrating that the substance was present for a sufficient period of time so as to impute constructive knowledge on the premises owner. *See Sagona v. Ross Dress for Less, Inc.*, No. 16-21240-CIV, 2017 WL 213063, at *2 (S.D. Fla. Jan. 17, 2017) (testimony that the coffee was dirty, there was coffee residue spread around the area, and there were coffee footprints); *Barillas v. Wal-Mart Stores, Inc.*, No. 14-CIV-62821, 2015 WL 11143345, at *2 (S.D. Fla. Dec. 1, 2015) (substance appeared slightly dried and had cart marks going through it); *Rapp v. Hess Retail Operations, LLC*, No. 8:14-CV-2289-MSS-TGW, 2015 WL 12765536, at *2 (M.D. Fla. Nov. 4, 2015) (the substance – blue PowerAde – turned dark brown, resembling cola, and was the consistency of syrup at the time of the fall); *Woods v. Winn-Dixie Stores, Inc.*, 621 So. 2d 710 (Fla. 3d DCA 1993) (the substance was "very dirty," "trampled," and "contain[ed] skid marks, [and] scuff marks."); *Newalk v. Florida Supermarkets, Inc.*, 610 So. 2d 528, 529 (Fla. 3d DCA 1992) (oil spots on the floor "appeared old"); *Zayre Corp. v. Bryant*, 528 So. 2d 516, 516 (Fla. 3d DCA 1988) (evidence of "black darkened grocery tire cart tracks running through" the "relatively clear" substance). In this case, there is no evidence of footprints, prior track marks, change in consistency, drying of the liquid, or other evidence suggesting that the substance was on the floor for such a length of time that Defendant should have known about it and taken action to remedy it.

2001, Florida law required the plaintiff to prove the premises owner had actual or constructive knowledge of the dangerous condition. *Id.* In 2001, *Owens* modified that burden by holding that, once the plaintiff establishes a fall on a transitory foreign substance, a rebuttable presumption of negligence arises. *Id.* (citing *Owens*, 802 So. 2d at 331). In response to *Owens*, the Florida Legislature enacted Florida Statute § 768.0710 in which it effectively did away with *Owens*'s burden-shifting aspects while preserving its elimination of actual or constructive notice as an element of a premises liability claim. *Id.* In 2010, the Florida Legislature repealed § 768.0710 and replaced it with § 768.0755 effective July 1, 2010. *Id.* Significantly, § 768.0755, the operative statute here, expressly requires that a plaintiff prove the business establishment had actual or constructive notice of the dangerous condition. *Id.* (quoting § 768.0755). Thus, Florida premises liability law has evolved significantly since *Mashini* was decided. Given the flux in the law, the Court does not find *Mashini* persuasive and instead defers to more recent decisions applying § 768.0755, such as *Encarnacion* and *Wilson-Greene, see supra*.

Next, the Court addresses Plaintiff's reliance on *Garcia*, which she cites for the proposition that constructive notice is imputed when there is evidence of water falling from above. *See* ECF No. [81] at 6. *Garcia*, however, does not reach such a conclusion, and Plaintiff does not otherwise cite to any case law supporting her claim. The facts in *Garcia* are distinguishable from those here. The record in *Garcia* contained eyewitness testimony from the plaintiff's husband who observed a track mark going through the substance *before* the fall occurred as well as photographic evidence revealing two lines traversing the liquid – one present before the fall and one caused by the fall. *Garcia*, 2015 WL 12765459 at *3, n.5. In this case, Plaintiff did not see the substance before she fell and she testified that *her shoe created the sole slip mark*. In addition, *Garcia* contained eye witness testimony that yellow, oily liquid was

leaking from the AC unit down a white beam, pooling under a pallet and then leaking onto the floor – facts that, coupled with the track mark, suggested the passage of time. *Id.* at *3. Although Plaintiff argues she observed "a drop of water" leaking from the AC unit after she fell, *see* ECF No. [81] at 7, there is no indication as to when the water began to drop *before* the fall.

As part of the summary judgment record, Plaintiff also submitted post-incident maintenance records to prove notice. She directs the Court to maintenance records dated three months *after* the incident reporting problems with humidity and condensation within the store. The Court finds that such records do not demonstrate notice or the existence of a leaking A/C unit in the frozen-food aisle *prior* to the date of the incident, August 10, 2015. At best, these records, dated November 19, 2015, demonstrate that Defendant's store was experiencing humidity and condensation problems starting in October of 2015 – two months *after* the incident.

Also relying upon maintenance records, Plaintiff argues that Defendant had notice of the condition because the store reported loud rattling sounds from the AC unit above the freezer where the incident occurred. *See* ECF No. [81] at 8. However, the maintenance document reveals that, at 6:15 p.m., on the day of the incident, an entry was created stating: "PER STORE, A/C UNIT ABOVE MIDDLE FREEZER IS MAKIN [sic] LOUD RATTLING NOISES." ECF No. [81-1] at 6. Plaintiff testified her fall occurred at approximately 1:30 p.m.; therefore, this entry was created almost five hours *after* the incident and is not evidence of Defendant's knowledge of a problem with the AC unit *prior* to 1:30 p.m. Even if such evidence were relevant to the question of notice, the maintenance record refers to a rattling noise, not a leak.

Similarly, Plaintiff refers the Court to the deposition testimony of Guzman, Defendant's employee, who said he inspected the area above the middle freezer where the incident occurred, finding that the pipe was making noise and shaking. However, as Defendant points out, Guzman testified that he could not recall when this occurred or whether it occurred in August of 2015. *See*

ECF No. 65-5 at 23, 30, 32.  Significantly, he also testified that, at the time of his inspection, the pipe was not leaking.  *Id.*  Relying upon this evidence, Plaintiff is asking the Court to make an inferential leap and assume that Guzman's inspection of the shaking pipe occurred in close temporal proximity to Plaintiff's incident and that the rattling/shaking pipe was linked to the leaking AC unit even though the pipe itself was not leaking.  *See Feinman.*, 2012 WL 6061745 at *6, n. 4 ("[A]n inference is not reasonable if it is only a guess or a possibility for such an inference is not based on the evidence but is pure conjecture and speculation.") (quoting *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1322 (11th Cir. 1982)).  Such an inferential leap based on conjecture and speculation is not reasonable.

Plaintiff next argues that constructive notice should be inferred from the presence of three employees in the frozen-food aisle with an unobstructed view of the area.  *See* ECF No. [81] at 6. In making this argument, Plaintiff is referring to Tello and two women serving samples at stations on the opposite end of the aisle.  The Court first notes that, of these three individuals, the record only contains Tello's testimony.  Therefore, any assumptions about what the two women, neither of whom worked for Defendant,[11] could see from their vantage point would be based on sheer speculation.  Even as to Tello, however, he testified that he had an unobstructed view of Plaintiff – not an unobstructed view of the substance.  *See* ECF No. [65-3] at 29, 77, and 88. This is a critical distinction.  It is undisputed that Plaintiff entered the frozen-food aisle from the rear.  *See* ECF No. [65-2] at 67; ECF No. [80] at ¶ 61.  Tello was located on the opposite end of aisle.  In fact, Plaintiff could not see Tello on the other end, believing no one else was in the area. While Tello may have had an unobstructed view of Plaintiff standing on the opposite end, this does

---

[11] Based on the record evidence, it is also unclear whether Defendant can be liable for the actions of these two individuals as they work for "an outside company."  ECF No. 65-4 at 43.  The nature of their relationship to Defendant, if any, is not explained in the parties' Statements of Material Facts.  Thus, even if the Court assumes that the two individuals had an unobstructed view of the area where Plaintiff fell, the Court is doubtful that Defendant can be liable for the actions of non-employees.

not lead to the inference that Tello could see the substance on the ground from that distance. By Plaintiff's own admission, the substance "wasn't that big" and Plaintiff has not directed the Court to any evidence demonstrating that the substance was visible from Tello's viewpoint. "This is not a case where a spill was at [his] feet and [he] did nothing about it." *Garcia v. Target Corp.*, No. 12-20135-CIV-DIMITROLEAS/SNOW, 2013 WL 12101087, at *3 (S.D. Fla. Feb. 26, 2013). Applying Florida law, multiple district courts have refused to impute constructive knowledge on a premises owner when an employee was standing at a significant distance from the substance. *Garcia*, 2013 WL 12101087 at *3 ("The presence of employees ten to fifteen feet away under the circumstances of this case is insufficient evidence to allow a reasonable jury to conclude that Target should have been on notice of the spill."); *see also Rubiano v. Wholesale Corp.*, No. 1:15-cv-24291-UU, 2016 WL 7540571, at *3 (S.D. Fla. Oct. 4, 2016) ("[D]espite Plaintiff's insistence, the record contains no evidence that Defendant's employees were close enough to see [Plaintiff's] fall and therefore likely able to see the liquid on the ground"); *Ayers*, 2017 WL 747541 at *3 (finding insufficient evidence of constructive knowledge when the employee was not standing next to the water and water, unlike a grape, is not visible). The Court, therefore, finds that Tello's presence at the opposite end of the aisle, without more, is insufficient to create an issue of fact as to notice.

Finally, Plaintiff argues that summary judgment should be denied because Tello did not follow company policy. *See* ECF No. [81] at 8-9. According to Plaintiff, Tello violated policy because he attended to a woman who allegedly slipped in the same area as Plaintiff and then turned his back to the area.[12] *Id.* To support this argument, Plaintiff states that Tello's inability to recall Plaintiff's appearance at his deposition means that his testimony about helping a customer who

---

[12] In a footnote, Plaintiff states she "disputes the credibility of this witness [Tello] and whether this witness in fact was speaking specifically about Plaintiff or another customer that may have slipped and fallen in his deposition testimony." *Id.* at 8, n. 3.

slipped and fell in the frozen-food aisle must refer to someone other than Plaintiff.[13]  As Defendant points out, Tello testified that, during his employment, he was only involved in helping one customer who slipped and fell – a female customer in the frozen-food aisle.  *See* ECF No. [65-3] at 42-43. Lucce testified that Tello reported Plaintiff's incident to him after it occurred.  *See* ECF No. [65-4] at 27-28.  The only inference that can be drawn from the undisputed evidence is that Tello attended to Plaintiff after her fall, not an earlier customer.  Plaintiff does not present evidence to suggest that Tello assisted another customer.  She only questions the credibility of his testimony.  On summary judgment, however, the Court does not weigh the credibility of evidence.  In fact, Plaintiff recognizes this much by arguing that "[a]t this stage, it is not the task of the Court to determine issues of credibility or weigh the evidence."  *Id.* at 10.  The Court, therefore, concludes that the only customer Tello assisted in the frozen-food aisle was Plaintiff.  Plaintiff's argument that Tello violated company policy can only relate to a violation occurring *after* he assisted Plaintiff.  Such a post-incident violation does not create an issue of fact on notice.  See *Wilson-Greene*, 208 So. 3d at 1275 (stating the relevant inquiry in a transitory foreign substance case is the amount of time the condition existed *before* the accident occurred).

In sum, the Court finds that Defendant satisfied its initial burden to prove the absence of a genuine issue of material fact on the element of constructive notice.  At that point, the burden shifted to Plaintiff to present evidence creating a genuine issue of material fact.  Plaintiff's evidence, however, is insufficient as it either relies on conjecture and speculation, misstates the record evidence, or cites to evidence post-dating the incident and bearing no relevance to the issue of notice.  Thus, the Court finds there is no genuine issue of material fact as to whether Defendant knew or should have known about the presence of the substance in the frozen-food

---

[13] In support of this argument, Plaintiff cites to Tello's deposition testimony in which he could not describe what Plaintiff looked like, the clothing she was wearing, the color of her hair, or her shoes and he could not identify Plaintiff when shown a photograph of her.  *See* ECF No. [80] at ¶ 59.

aisle prior to Plaintiff's fall.  Absent evidence of notice, there cannot be a breach of the duty of reasonable care.  Plaintiff's inability to prove a necessary element of her claim requires the entry of summary judgment in favor of Defendant.

## IV.     CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, **ECF No. [65]**, is **GRANTED**.  To the extent not otherwise disposed of, all pending motions are **DENIED** as moot.  The Clerk is **DIRECTED** to mark this case **CLOSED**.  Final Judgment will be entered by separate order.

**DONE AND ORDERED** in Miami, Florida this 18th day of August, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record